UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SILVER OAK ADULT DAYCARE, L.L.C., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) CV 08-B-1457-S ) ) |
| CITY OF GRAYSVILLE; JEFFERSON COUNTY; JEFFERSON COUNTY COMMISSION, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This case is presently pending before the court on the Motion to Dismiss filed by defendants Jefferson County and Jefferson County Commission [hereinafter "defendants"].[1] (Doc. 13.)[2] Plaintiff Silver Oak Adult Daycare has sued defendants seeking declaratory and injunctive relief under Title II of the Americans with Disabilities Act [the ADA], and § 504 of the Rehabilitation Act. Defendants ask this court to dismiss plaintiff's claims on the ground that plaintiff lacks standing. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss, (doc. 13), is due to be denied.

---

[1]Defendant City of Graysville, Alabama, is not a party to this Motion to Dismiss.

[2]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

## I. <u>MOTION TO DISMISS STANDARD</u>

Defendants contend that plaintiff lacks standing. "'Both standing and ripeness originate from the Constitution's Article III requirement that the jurisdiction of the federal courts be limited to actual cases and controversies.'" *Florida Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009)(quoting *Elend v. Basham*, 471 F.3d 1199, 1204-05; citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005)). Under Fed. R. Civ. P. 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case. Plaintiff, as the party invoking jurisdiction, bear the burden of establishing the court's subject matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994). Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982). "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence*, 919 F.2d at 1528-29). Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). "Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters

outside the pleadings, such as testimony and affidavits, are considered.'" *Cook Oil Co., Inc. v. United States*, 919 F. Supp. 1556, 1559 (M.D. Ala. 1996)(quoting *Lawrence*, 919 F.2d at 1529). None of the parties have submitted any evidence outside the pleadings. Therefore, defendants' challenge to the court's subject-matter jurisdiction based on plaintiff's standing is a facial challenge.

## II. STATEMENT OF FACTS

In its Amended Complaint, plaintiff alleges:

Silver Oak is in the business of providing adult daycare services to the elderly in Graysville, Alabama, and specializes in serving the needs of senior citizens suffering from disabilities, primarily Alzheimer's as well as other disabilities. The vast majority of Silver Oak's membership have mobility impairments, in addition to suffering from Alzheimer's, and require walkers and/or wheelchairs for mobility. Silver Oak is engaged in providing daycare services to such individuals in the City of Graysville including field trips in and about the City of Graysville in an attempt to service its members while taking advantage of the programs and services offered by the City of Graysville. Silver Oak and its members have suffered direct and indirect injury as a result of the Defendants' actions or inactions described herein. Prior to instituting the instant action, Silver Oak and its members have visited the Defendants' facilities and attempted to avail themselves of the programs and services offered but were unable to fully, safely and equally do so due to the barriers to access that exist and the Defendants' lack of compliance with the ADA and the Rehabilitation Act. Silver Oak and its members continue to be discriminated against due to the Defendants' continued lack of compliance and Silver Oak and its members continue to desire and intend to visit the Defendants' premises and utilize Defendants' programs and services. Silver Oak has been discriminated against directly, as well as because of its association with its members . . . .

(Doc. 10 ¶ 3.) With regard to its ADA claim, plaintiff alleges:

16. In June and July of 2008, Defendants altered the city streets, primarily Main Street and Second Avenue SW, by resurfacing them and thus

triggered the requirement to provide curb ramps at all intersections along such roads having curbs or other barriers to entry from a street level pedestrian walkway per 28 C.F.R. §35.151(e)(1).

17. As a part of the resurfacing of Main Street as referenced in the foregoing paragraph, Defendants removed accessible features from the entrance to Plaintiff's facility by deleting the diagonal parking spaces and by failing to provide accessible parking spaces and curb ramps.

18. As a governmental and public entity, and as officials comprised of the highest level of decision makers, Defendants have engaged in conduct and acts of omission that subject Plaintiff to discrimination solely on the basis of the disabilities suffered by its clientele. Defendants directly participated in or acquiesced in the conduct or acts of omission described in this Complaint. Defendants' discrimination against Plaintiff solely on the basis of disability has been, and continues to be, arbitrary, knowing and intentional.

19. Under Title II of the ADA, the programs and activities of public entities must be accessible to people with disabilities unless that would cause a "fundamental alteration" to the program or activity or constitute an "undue financial and administrative burden" to the entity. 28 C.F.R. § 35.149-150. It is the burden of the entity to prove that compliance would result in such fundamental alteration or financial burden. Further, any decision that compliance would result in alteration or burden must be made after "considering all resources available for use in the funding and operation of the service, program, or entity, and must be accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 35.150(a)(3). Defendants cannot meet this burden.

20. Plaintiff was subjected to discrimination in attempts to access the programs, services and facilities operated and owned by Defendants. Plaintiff continues to desire to utilize Defendants' programs and services as well as return to the facilities owned and operated by Defendants and therefore will continue to suffer discrimination by Defendants in the future.

21. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice, Office of Attorney General, promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 35 and ADA Standards for Accessible Design, 28 C.F.R. Part 36, Appendix A.

22. Defendants have discriminated against Plaintiff by denying full and equal enjoyment of benefits of a service, program or activity conducted by a public entity as prohibited by 42 U.S.C. §12101 et seq., and by failing to remove architectural barriers pursuant to 28 C.F.R. §35.150(c).

23. Defendants have discriminated, and continue to discriminate against the Plaintiff, and others who are similarly situated, by denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations of Defendants in derogation of Title II of the ADA, 42 U.S.C. § 12101 et seq.

24. The Plaintiff has been unable to and continues to be unable to enjoy access to the benefits of the programs, services and facilities owned, operated and/or leased by Defendants.

25. In addition to not providing equal access to the programs, services and facilities offered and operated by Defendants, Defendants are in violation of 42 U.S.C. § 12101 et seq. and 28 C.F.R. § 36.302 et seq. and are discriminating against the Plaintiff due to the following barriers to Plaintiff's full, safe and equal access due to the disabilities of Plaintiff's clientele, inter alia:

**General**

    i. No accessible parking is provided on Main Street or Second Avenue SW;
    ii. Many city sidewalks contain obstacles, changes in level and other barriers to access which block or impede the accessible path of travel;
    iii. No city sidewalks contain curb cuts and/or curb ramps necessary for individuals with mobility impairments to access and utilize the sidewalks;

**City Hall**

    iv. No signage is provided at the main entrance to alert individuals with disabilities that the accessible entrance is located in the rear;
    v. No compliant accessible parking space with raised signage is provided. The existing parking space currently designated as

accessible lacks raised signage and lacks an access aisle of the appropriate width;

**Gas and Water Utilities Building**

vi. No signage is provided at the main entrance to alert individuals with disabilities that the accessible entrance is located in the rear;
vii. No compliant accessible parking space with raised signage is provided. The existing parking space currently designated as accessible lacks raised signage and lacks an access aisle of the appropriate width;

**Maurice C. West Community Center**

viii. The wooden ramp providing access to the main entrance lacks handrails;
ix. The toilet rooms lack a standard accessible toilet stall compliant with Figure 30(a) of the ADA Standards;
x. The toilet stall designated as accessible lacks a rear grab bar and contains a side grab bar that is too short;
xi. The coat hook provided in the toilet stall designated as accessible is too high;
xii. The lavatory does not provide sufficient knee clearance for a wheelchair user;
xiii. The lavatory pipes are exposed;
xiv. The showers provided in the toilet rooms are not wheelchair accessible and completely lack any accessible features whatsoever due to a raised threshold, the lack of a fixed bench, the lack of grab bars, the lack of hand controls, etc.;
xv. The senior center currently under construction adjacent to Maurice C. West Community Center contains built up curb ramps that are too steep and contain flared sides that are too steep;
xvi. The existing built up curb ramps provided are likely to protrude into access aisles to be provided for accessible parking spaces and which are required to be level;

**City of Graysville Walking Track and Park**

xvii.  No accessible route to the walking track is provided due to the presence of stairs and the lack of a ramp;
xviii. No accessible picnic tables are provided;
xix.   There is no accessible route to the existing picnic table;
xx.    There is a change in level to access the gazebo which is not ramped;

**Tennis Courts**

xxi.   No accessible parking is provided at the tennis courts;
xxii.  No accessible route is provided to the tennis courts from the sidewalk or the parking lot adjacent to the tennis courts;
xxiii. No accessible entrance to the tennis courts is provided due to a change in level at the tennis courts;
xxiv.  No accessible route is provided to the picnic tables adjacent to the tennis courts;
xxv.   No accessible picnic tables are provided adjacent to the tennis courts;

. . .

28. Pursuant to 42 U.S.C. § 12188, this Court is vested with the authority to grant Plaintiff injunctive relief, including an Order to alter the subject programs, services and facilities to make them readily accessible to, and useable by, individuals with disabilities to the extent required by the ADA, and closing the subject programs, services and facilities until the requisite modifications are completed.

(*Id*. ¶¶ 16-25, 28.) Plaintiff makes similar allegations with regard to its Rehab Act claim.

(*See id*. ¶¶ 31-34.)

### III.  DISCUSSION

Defendants contend that plaintiff "lacks standing to assert the claims set out in the Complaint." (Doc. 13 ¶ 3.) They contend that Title II of the ADA only applies to disabled

7

individuals and plaintiff cannot have "associational" or "organizational" standing, because it is a for-profit business without "members." (*Id*. ¶¶ 3-4.) The Eleventh Circuit Court of Appeals has recently restated the well-established requirements of standing:

> Standing under Article III has three elements: (1) "the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Florida Family Policy Council*, 561 F.3d at 1253 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992))

Relying on 28 C.F.R. § 35.130(g), plaintiff argues that "as an adult day care facility, [it] has a known relationship and association with individuals with disabilities and has been directly discriminated against due to Jefferson County's failure to abide by ADA Standards." (Doc. 15 at 7.) It argues that it has standing to assert its own injuries directly caused by defendants in violation of Title II of the ADA.[3] The court agrees.

> First, although Title II contains no express right to be free from discrimination because of association with qualified individuals with disabilities, ***Title II's enforcement provision does not limit its remedies to***

---

[3]Plaintiff argues that it "has suffered direct injuries to the extent that no accessible parking is provided on Main Street in the vicinity of plaintiff's facility and to the extent that no curb ramps are provided along Main Street. This makes it difficult for plaintiff to operate an adult day care facility that caters to individuals with disabilities, many of whom have mobility impairments and require walkers and wheelchairs. (Doc. 15 at 4-5.)

*individuals with disabilities*.  Rather, Title II expressly provides a remedy to "***any person*** alleging discrimination on the basis of disability in violation of section 12132."  42 U.S.C. § 12133 (emphasis added); *see also* 1 U.S.C. § 1 (2000) (defining "person" to include various entities). This broad language in the enforcement provision "evinces a congressional intention to define standing to bring a private action . . . as broadly as is permitted by Article III of the Constitution."  *MX Group* [*v. City of Covington*], 293 F.3d [326,] 334 [(6th Cir. 2002)](quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997), *superseded by Rule on other grounds as stated in Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001))(internal quotation marks and alterations omitted).

This interpretation seems particularly reasonable when we look to the text of the statute as a whole and the accompanying legislative history.  Titles I, II, and III of the ADA do not contain neatly drawn parallel provisions; while Titles I and III list many specific actions that constitute discrimination, Title II simply provides a blanket prohibition on discrimination without listing any specific acts that are proscribed.  *Compare* 42 U.S.C. §§ 12112(b) (Title I) and *id*. § 12182(b) (Title III) *with id*. § 12132 (Title II).  When listing the specific actions that constitute discrimination in Titles I and III, Congress expressly protected entities that suffer discrimination "because of the known disability of an individual with whom the . . . entity is known to have a relationship or association."  42 U.S.C. § 12182(b)(1)(E) (Title III); *see also id*. § 12112(b)(4) (Title I); *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 214 (4th Cir. 1994).  Certainly aware of this asymmetry, the House Committee on Education and Labor explained that, in Title II, "[t]he Committee has chosen not to list all the types of actions that are included within the term 'discrimination', as was done in titles I and III . . . . The Committee intends, however, that the forms of discrimination prohibited by [Title II] be identical to those set out in the applicable provisions of titles I and III of this legislation."  H.R. Rep. No. 101-485(II), at 84 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 367; *see also* S. Rep. No. 101-116, at 44 (1989).  Of course, Titles I and III do provide a cause of action for associational discrimination.  See 42 U.S.C. §§ 12112(b)(4), 12182(b)(1)(E).

Furthermore, Congress specifically directed the Attorney General to promulgate regulations implementing Title II that "shall be consistent with this chapter."  42 U.S.C. § 12134(a), (b); *see also* H.R. Rep. No. 101-485(III), at 52 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 445, 475 ("The Committee intends that the regulations under title II incorporate interpretations of the term

9

>  discrimination set forth in titles I and III . . . ."); H.R. Rep. No. 101-485(II), at 84 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 367 ("[T]he construction of 'discrimination' set forth in section 102(b) and (c) and section 302(b) should be incorporated in the regulations implementing this title."). In response to this congressional directive, the Attorney General promulgated regulations implementing Title II that do indeed bar associational discrimination. ***These regulations explicitly prohibit local governments from discriminating against entities because of the disability of individuals with whom the entity associates***. 28 C.F.R. § 35.130(g). ***Additionally, the appendix to the regulations clarifies that this provision is "intended to ensure that entities such as health care providers . . . and others who provide professional services to persons with disabilities are not subjected to discrimination because of their professional association with persons with disabilities***." 28 C.F.R. § 35.130(g) app. A.

*A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 363-64 (4th Cir. 2008)(emphasis added and in original). The court finds that plaintiff may sue defendants for discrimination it has suffered as a result of its association with its disabled clients under Title II of the ADA and under the Rehab Act. *Id*. The result is the same under the Rehab Act. *See Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005)("[T]he ADA grants the right to relief to 'any person alleging discrimination on the basis of disability,' 42 U.S.C. § 12133, and the RA [Rehab Act] extends remedies to 'any person aggrieved' by unlawful discrimination, 29 U.S.C. § 794a(a)(2). 'Any person' may include individuals as well as entities.")

Defendants argue that they had no "knowledge of Silver Oak's members' alleged disabilities, much less these members' associations with Silver Oak. Simply put, there is no allegation in this suit that Jefferson County knew of any association between any disabled individual and Silver Oak and made any adverse action based on that association." (Doc. 16

10

¶ 4 [internal quotations omitted].)  However, for purposes of deciding this Motion to Dismiss, the court presumes that defendants knew that "adult day care" refers to the care of elderly individuals, frequently with dementia, who are unable to care for themselves during the day.  Just as "day care" refers to the business of caring for children while their parents are at work; "adult day care" refers to the business of caring for an elderly parent during the day while the child is at work.[4]  In deciding the Motion to Dismiss, the court rejects any argument that defendants were unaware of the meaning of adult day care, and, therefore, it rejects defendants' assertion that it was unaware of the disabilities of plaintiff's clients.

Defendants also contend that plaintiff does not have standing to raise the claims of its clients because it operates a for-profit business.  However, they have provided no caselaw distinguishing for-profit entities from not-for-profit entities for purposes of representative standing.  The Supreme Court has established "a three-prong associational standing test," which allows an "association . . . to bring suit on behalf of its members" when the association can show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the

---

[4]"Adult day care centers provide a place for infirm elderly or disabled people being cared for by their relatives to go during the day to receive care and sometimes medical services while their relatives work or receive a short respite.  Their major source of income is the daily rates they charge clients.  Some clients pay out of their own resources, but, in many cases, state and federal money pays a set daily fee for low-income seniors." Niesz, Helga, *Adult Day Care Centers: State and Federal Support Roles, Closures, Other Questions* (August 5, 2005) at <<http://www.cga.ct.gov/2005/rpt/2005-R-0551.htm>>

lawsuit." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996)(quoting *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)). Without genuine dispute, plaintiff's disabled clients have standing to sue based on the lack of handicapped parking and curb ramps. Moreover, the interests plaintiff seeks to protect, accessiblility for the disabled, is germane to its business purpose. Finally, the court notes that "when the relief sought is injunctive, individual participation of the organization's members is 'not normally necessary.'"[5] *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008)(quoting *United Food & Commercial Workers*, 517 U.S. at 546). Despite defendants' arguments to the contrary, the court finds that, at least for purposes of the ADA and the Rehab Act, a business whose clients are disabled may have pure associational standing to sue on its clients behalf. *See Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399, 406-07 (3d Cir. 2005)("Congress may create a right of action where prudential standing rules would otherwise create a bar to suit, and may do so 'either expressly or by clear implication.' Where an association asserts claims **solely on behalf of its members**, standing 'depends in substantial measure on the nature of relief sought.' In such cases of pure associational standing, an association is limited to relief that, 'if granted, will inure to the benefit of those members of the association actually injured.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 515 (1975); internal citations

---

[5]The court notes that plaintiff does not seek monetary damages for its clients. (Doc. at 11-13, 16-17.)

omitted; emphasis in original))). Therefore, the court finds that plaintiff has associational standing.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that plaintiff has standing to sue and defendants are not entitled to judgment as a matter of law. An Order denying defendants' Motion to Dismiss, (doc. 13), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 16th day of June, 2009.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE